ROBERT BOUSMAN v. STATE OF INDIANA. MICHAEL C. DIXON v. STATE OF INDIANA.

[Nos. 1-1274A178; 1-1274A179. Filed December 29, 1975. Rehearing denied February 4, 1976. Transfer denied May 6, 1976 (No. 1-1274A 178) and June 17, 1976 (No. 1-1274A179.)]

-Harriette Bailey Conn, (Mrs.), Public Defender of Indiana, Larry A. Landis, Deputy Public Defender, for appellants.

Theodore L. Sendak, Attorney General, Arthur Thaddeus Perry, Deputy Attorney General, for appellee.

LOWDERMILK, J. — Defendants-appellants (Bousman and Dixon) bring these appeals from their convictions of first degree burglary.

FACTS:

In October of 1972, the Parke County Sheriff and the Indiana State Police conducted a raid in said county, and confiscated approximately 830 pounds of marijuana. The marijuana was taken to the Parke County Jail, bagged in green plastic garbage bags and stored in the basement for use as evidence.

The jail building apparently has a main floor and a full basement. The main floor contains the office for the sheriff, jail cells, and living quarters for the sheriff and his family. The basement can be reached by at least one outside entrance and by stairs leading down from a locked door in the sheriff's office. There is no direct access to the basement from the living quarters, although the living quarters are directly above a portion of the basement.

After the marijuana was stored in the basement, the sheriff received information that someone might attempt to steal the marijuana from the jail. Acting on this tip, the sheriff, on the evening of February 12, 1974, remained in his office to guard against any possible break-ins. The sheriff testified that he was able to stay awake only until about 2:30 A.M., however, and that when he awoke around 4:30 A.M., he

found the lock on the outside basement door and two bags of marijuana missing.

The State's chief witness testified that she was present in November and/or December of 1973 when Bousman, Dixon and others discussed and planned taking marijuana stored in the Parke County Jail. She further testified that she was with Dixon and Bousman in February of 1974, and that they exhibited two green garbage bags of marijuana which they claimed they stole from the basement of the jail. This marijuana was "stripped" and placed in smaller "baggies."

Another State's witness testified that she observed Bousman and another person remove two green plastic garbage bags from a car, driven by Dixon, which was parked in her driveway. These bags were carried to a wooded area and later removed by persons unknown.

Although there is some confusion as to the dates involved, this witness stated that she observed Bousman about 2:30 P.M. on February 12, 1974. Dixon and Bousman were finally arrested on or about March 26, 1974, and police found approximately one (1) ounce of marijuana in Bousman's pocket at that time.

## ISSUES:

Bousman presents the following issues for our review:

1) Whether the basement of the Parke County Jail is a dwelling house within the meaning of that term under the Indiana burglary statute.

2) Whether the court erred in admitting into evidence State's Exhibit No. 1.

3) Whether reversible error was committed when the arresting officer was permitted over objection to testify about and display the marijuana found on the defendant at the time of his arrest.

4) Whether the evidence was sufficient to support a verdict of guilty beyond a reasonable doubt.

A.

I.

As noted above, the marijuana was stored in the basement of the jail, and illegal entry was made directly into the basement from outside the building. At no time during the burglary were the living quarters above the basement entered, nor were any entrances to the living quarters disturbed.

Further, the only evidence as to the use of the basement is that the sheriff used it to store evidence for a future trial.

Given the above facts, Bousman contends that he did not enter into a "dwelling house" within the meaning of IC 1971, 35-13-4-4, Ind. Ann. Stat. § 10-701 (a) (Burns 1956). Bousman places much emphasis on the facts that there is no direct stairway from the basement to the living quarters, and that there is no evidence that the basement was considered or used as part of the living quarters of the sheriff's family. Bousman asserts these facts support his contention that the living area on the first floor and the basement are not directly related either physically or functionally, and that, therefore, an essential element of the crime of first degree burglary is not proved by the State.

Our consideration of this matter is materially aided by the decision of this court (Second District) in the recent case of *Burgett v. State* (1974), 161 Ind. App. 157, 314 N.E.2d 799. In that case, Burgett was charged with first degree burglary in the removal of certain items from the cellar of a house. Burgett asserted that there was no internal communication between the basement and the first floor living area, and maintained that such a basement could not be a "dwelling house" within the statute.

In answering Burgett's argument, the court stated, at page 803:

"Basements are located directly under the living area of a residence and are used for a variety of purposes connected with family living, such as storage of various household items, location of heating and mechanical equipment,

and laundering of clothing. Being under the same roof, functionally interconnected with and immediately contiguous to other portions of the house, it requires considerable agility to leap over this fulsome interrelationship to a conclusion that a basement is not part of a dwelling house because no inside entrance connects the two."

After considering several earlier cases which considered similar questions, the court concluded that

"Throughout these cases runs the notion that a dwelling house encompasses all portions of the residential structure which is possessed by and within the 'range of sentiment and feeling' of the persons residing therein."

In addition to the above, we feel it is imperative that the essential character of the crime of first degree burglary be kept in mind. Burglary in the first degree is not primarily an offense against property. Rather, it is an offense against the sanctity and security of the home. *See generally, Carrier* v. *State* (1949), 227 Ind. 726, 89 N.E.2d 74; *Smart* v. *State* (1963), 244 Ind. 69, 190 N.E.2d 650; Annot., 43 A.L.R.2d 831; 12 C.J.S. Burglary §§ 1 (b), 16 (1938).

In the case at bar, as in *Burgett,* there is no access to the living quarters *directly* from the basement which was entered. However, unlike *Burgett,* an internal stairway led from the sheriff's office, which was next to the living quarters, directly to the basement. Given this fact, we find it impossible to conclude that the security of the main floor living quarters would not be threatened by an illegal entry into the basement below.

This is not a case where the building entered was used for various unrelated purposes. The jail was intended for use, in large part, as a residential structure for both permanent (the sheriff and his family) and temporary (inmates) inhabitants. In this sense, we can perceive of the jail as both a "dwelling house" and a "place of human habitation." We are not here called upon to decide

whether a basement is a dwelling house apart from the remainder of the building. We hold merely that a basement such as the one in the case at bar is part and parcel of a residential structure so as to make entry into such a basement entry into a dwelling house or place of human habitation within the above statute.

## II.

We must next decide whether it was error for the trial court to admit into evidence State's Exhibit No. One, which was a green plastic garbage bag containing two bundles of marijuana.

Bousman contends alternatively, that the exhibit was irrelevant; that even if relevant there was no proper foundation for its introduction; that there was no evidence that the bag contained marijuana; and, finally, that any evidentiary value was outweighed by prejudice to him.

The testimony of Sheriff Cooper established that marijuana taken in a raid was bagged in thirty-eight (38) green plastic garbage bags, tied with "binder twine" and stored in the basement of the Parke County Jail. One Bridgewater further testified that she was with Bousman and Dixon and others when they had two green plastic garbage bags, tied with twine, which contained marijuana. Finally, another's testimony was that Bousman and another person were observed the day after the theft removing two such bags from the trunk of a car, which was being driven by Dixon.

The bag introduced at trial was identified as one of the original 38 which contained marijuana, and it was also established that all of the bags were similar.

The admission of evidence is within the discretion of the trial court, *Pack* v. *State* (1974), 162 Ind. App. 107, 317 N.E.2d 903, and we hold that it was not improper for the trial court to admit State's Exhibit No. One (1).

The type of bag used by the sheriff and seen in Bousman's custody was similarly described by several witnesses, and it has been held that a jury may learn by observation that which they may learn by description or testimony. Such is the case here. The jury could assign whatever weight they chose to the evidence that Bousman was seen with bags similar to the one admitted into evidence, but we believe the bag was circumstantial evidence which the court properly admitted. At worst, the bag is cumulative evidence, but not of the type which was inherently prejudicial to Bousman or decisive of the case. *See, Mitchell* v. *State* (1972), 259 Ind. 418, 287 N.E.2d 860, *Thomas* v. *State* (1971), 256 Ind. 309, 268 N.E. 2d 609. We wish to emphasize that the State did not attempt to link Bousman with the bag admitted into evidence. The sole purpose for the introduction of the bag was to show that bags similar in size, color, et cetera, were stored in the jail and seen in the appellant's possession.

### III.

The issue we must next decide is whether it was error for the trial court to deny Bousman's motion for mistrial following the State's exhibition of, and testimony about, the packet of marijuana seized from Bousman at the time of his arrest.

Bousman asserts essentially the same arguments as in Part II, *supra,* with the additional one that the introduction of the evidence was *calculated* to prejudice him, i.e., that it was an "evidential harpoon."

Bousman points out that the packet itself was not identified as one possessed by him the day marijuana was "stripped" in the presence of witness Bridgewater, and that his arrest and the seizure of the packet was some six (6) weeks after the break-in at the jail. Further, it is asserted that inasmuch as the State did not attempt to have the packet admitted into evidence, it is clear that the State deliberately tried to prejudice Bousman by exhibiting the packet in open court.

Assuming without deciding that the conduct of the State was improper, and approaching the question. *as if* it were one of harmless error, *White* v. *State* (1971), 257 Ind. 64, 272 N.E.2d 312, we do not find reversible error in the case at bar. As noted above, Bousman was observed with items closely resembling those stolen shortly after the theft from the jail. Further evidence was that Bousman or Dixon stated they had entered the basement of the Parke County Jail and removed therefrom two large bags of marijuana. Thus, there is evidence to prove the essential elements of the crime charged, to-wit: (1) breaking and entry (2) into a dwelling house (3) with intent to commit a felony. In light of such overwhelming evidence of guilt, we hold that the conduct of the State does not constitute reversible error. *See, Moss* v. *State* (1973), 163 Ind. App. 483, 324 N.E.2d 820; *Brown* v. *State* (1972), 258 Ind. 412, 281 N.E.2d 801; *Moss.* v. *State* (1975), 165 Ind. App. 502, 333 N.E.2d 141, reh. denied 335 N.E.2d 633.

### IV.

From the foregoing, it is evident that we also find the evidence sufficient to sustain Bousman's conviction.

### B.

Dixon's conviction arose from the same incident as Bousman's and he raises the same arguments as considered above in §§ I, II and IV. With regard to such issues we consider the discussion and holdings above to be fully applicable to Dixon. However, Dixon raises two additional questions, which we now consider separately.

### I.

Dixon contends that it was error for the trial court to permit the prosecution to question him regarding prior adult and juvenile convictions for theft and burglary. Dixon cites

*Ashton* v. *Anderson* (1972), 258 Ind. 51, 279 N.E.2d 210, and IC 1971, 34-1-14-14 (Burns Code Ed.) for support.

With regard to the prior adult conviction for theft we find no reversible error. Whatever merit there may be in Dixon's argument, we find that the prosecution questioned him about at least one other conviction without objection, and that Dixon, in fact, volunteered information regarding still other convictions for assault and battery and resisting arrest. In light of Dixon's failure to object to testimony nearly identical to that now questioned, and his apparent willingness to discuss his prior criminal record, we find that Dixon cannot now complain.

With regard to Dixon's juvenile conviction, we find that such question has not been adequately preserved for our consideration.

At trial, Dixon's objection was as follows:

"In the year 1966 were you convicted of second degree burglary and sent to the Boys School?

MR. KENLEY: I object, Your Honor. That's not relevant to the issues before this Court.

COURT: Overruled.

Yes."

The motion to correct errors addresses the issue in the following manner:

"5. The Court erred at law in overruling defendant's objection to cross-examination of defendant concerning his prior criminal record."

It is evident that both during and after trial, the court was presented with only the most general objections. We have often stated the need for specific objections both at trial and in the motion to correct errors, and we find that Dixon's objections are not sufficient in either respect. *Woods* v. *State* (1974), 162 Ind. App. 316, 319 N.E.2d 688; *Worsley* v. *State* (1974), 162 Ind. App. 34, 317 N.E.2d 908; *Foxall* v. *State* (1973), 157 Ind. App. 19, 298 N.E.2d 470.

## II.

The remaining issue is whether the trial court erred in giving State's Instruction No. 8, which is a restatement of one given in *Ringham* v. *State* (1974), 261 Ind. 628, 308 N.E.2d 863. Dixon contends that the instruction is incorrect and incomplete; that it misled the jury regarding the consideration of "subsidiary" facts or evidence; and that it told the jury that "improbable" evidence could be considered. Instructions similar to the one herein complained of have been discussed and approved in several earlier cases, *see, Ringham* v. *State, supra; Fuller* v. *State* (1973), 261 Ind. 376, 304 N.E.2d 305; *Olson* v. *State* (1973), 158 Ind. App. 603, 304 N.E.2d 830, reversed on other grounds 315 N.E.2d 692, and while we would agree that the instruction in the case at bar is less coherent than those in the cases above, we do not find any significant variance which amounts to reversible error.

Further, an inspection of the record reveals that preliminary Instructions 5, 7 and 9, State's Instructions 1, 3, 5 and 9, and Dixon's Instructions 6 and 9 deal with the consideration of evidence, burden of proof, and presumption of innocence. Thus, we find that the jury was otherwise adequately instructed regarding the matters contained in State's Instruction No. 8.

The judgments of the trial court regarding both Bousman and Dixon are affirmed.

Robertson, C.J. and Lybrook, J., concur.

NOTE.—Reported at 338 N.E.2d 723.