COLORADO COURT OF APPEALS                    2016COA101

Court of Appeals No. 15CA0159
Logan County District Court No. 13CR284
Honorable Charles M. Hobbs, Judge

The People of the State of Colorado,

Plaintiff-Appellant,

v.

Antero Alaniz,

Defendant-Appellee.

ORDER AFFIRMED

Division III
Opinion by JUDGE RICHMAN
Graham and Booras, JJ., concur

Announced June 30, 2016

Brittny B. Lewton, District Attorney, Sterling, Colorado, for Plaintiff-Appellant

Douglas K. Wilson, Colorado State Public Defender, Jud Lohnes, Deputy State Public Defender, Denver, Colorado, for Defendant-Appellee

¶ 1    The People appeal the district court's order dismissing charges of second degree murder and first degree assault against defendant, Antero Alaniz, an inmate at Sterling Correctional Facility.  The court dismissed the charges pursuant to section 18-1-704.5, C.R.S. 2015, known as Colorado's "make-my-day" statute[1], which provides that under certain circumstances an occupant of a dwelling who uses any degree of physical force, including deadly physical force, against an intruder shall be immune from prosecution.

¶ 2    We conclude that Alaniz's prison cell constituted a dwelling for purposes of section 18-1-704.5 and the district court did not err in finding that Alaniz established the requirements for immunity. Therefore, we affirm the order of dismissal.

## I.    Background

¶ 3    Alaniz is an inmate in the Colorado Department of Corrections (CDOC) serving a sentence of life imprisonment without the possibility of parole imposed in a separate case.  The People filed

---

[1] The statute's nickname comes from the film *Sudden Impact*, starring Clint Eastwood in the role of Dirty Harry, in which he uses the catch phrase "go ahead, make my day" before dispatching various bad guys.  Dirk Johnson, *Colorado Journal; 'Make My Day': More Than a Threat*, N.Y. Times, June 1, 1990, https://perma.cc/HAQ9-S76F.

the charges in this case after another inmate, Cleveland Flood, was found dead in a cell shared by Alaniz and Aaron Bernal at Sterling Correctional Facility in 2011.

¶ 4     Alaniz moved to dismiss the charges pursuant to section 18-1-704.5, and the People filed a written response opposing the motion.  The court held an evidentiary hearing and heard testimony from Alaniz, several other inmates, and a CDOC investigator.  The court also admitted surveillance video from outside the cell and photographs taken during the investigation.

¶ 5     According to the testimony at the hearing, and as the trial court found in its lengthy written order, Alaniz and Bernal shared a cell in a housing unit where inmates could control the locks on their own cell doors unless the unit was on lockdown.  Alaniz and Bernal were described as close friends who generally kept to themselves and did not cause trouble for prison staff or other inmates.

¶ 6     Flood lived in a different cell in the same housing unit.  Both the CDOC investigator and the other inmates described Flood as a bully who had a reputation for extorting other inmates, particularly those who were either mentally or physically weaker than he was.

He was larger than Alaniz and Bernal, and he was not a friend of either of them.

¶ 7    Alaniz testified that on the evening of February 12, 2011, he and Bernal were in their cell watching a movie while the unit was on lockdown for the nightly count. When the lockdown ended, Bernal unlocked the cell door from the inside, and it popped open a few inches. According to Alaniz's testimony, a short time later, Flood entered the cell uninvited, closed the door behind him, brandished a shank, and demanded commissary items. Alaniz did not testify about what followed. A surveillance video from outside the cell, admitted into evidence, showed Flood entering the cell, but it did not show what happened inside.

¶ 8    Alaniz and Bernal emerged from the cell a few minutes later and contacted prison authorities. Flood was found dead inside the cell with approximately ninety puncture wounds and ligature marks around his neck. Investigators also found two shanks in the cell. Bernal had abrasions and puncture wounds, and Alaniz had marks on his body consistent with a struggle.

¶ 9    In their written response to Alaniz's motion to dismiss and at the hearing, the People argued that Alaniz failed to prove two

requirements for immunity under section 18-1-704.5. First, they argued that Flood did not make an unlawful entry into the cell. Second, they argued that Alaniz did not have a reasonable belief that Flood intended to commit a crime in the cell and might use force against an occupant.

¶ 10    The court issued a written order dismissing the charges. The court stated that the People had conceded that a prison cell was a dwelling for purposes of "make-my-day" immunity under section 18-1-704.5:

> [T]he prosecution does not challenge perhaps the most novel theory of this motion: that an inmate in the Department of Corrections is even entitled to invoke this legal protection. The defense argues that a jail cell qualifies as a dwelling pursuant to *People v. Nichols*, 920 P.2d 901 (Colo. 1996). In that case the Court found that for purposes of the burglary statute an inmate's cell constituted a dwelling. Here the prosecution does not challenge that analysis. In this case the testimony is that the inmates had keys to their cells that they could control whether or not other inmates were allowed to enter into their cell, and that they kept their personal and confidential items in their cell. Because the prosecution concedes that a prison cell is a dwelling for purposes of this statute, they are essentially conceding that an inmate is entitled to invoke the protections of the castle doctrine.

¶ 11    Based on the evidence presented at the hearing, the court concluded that the other requirements of "make-my-day" immunity were met.  It found that the victim made an uninvited, unlawful, and "highly provocative" entry into the cell while brandishing a weapon.  It also found that Alaniz reasonably believed that the victim intended to commit a crime in the cell and might use physical force against an occupant.  The court concluded that Alaniz met his burden in showing by a preponderance of the evidence that he was entitled to immunity under section 18-1-704.5, and it dismissed the charges against him.

¶ 12    On appeal, the People contend that the district court erred in dismissing the charges pursuant to section 18-1-704.5 because a prison cell is not a dwelling for purposes of that statute, and because permitting "make-my-day" immunity in a prison setting would be contrary to public policy.  They also contend that Alaniz was not entitled to dismissal because he failed to prove that he used any force against the victim.  We reject these contentions and therefore affirm the order of dismissal.

II.    Section 18-1-704.5 Immunity

¶ 13    Section 18-1-704.5 provides:

(1) The general assembly hereby recognizes that the citizens of Colorado have a right to expect absolute safety within their own homes.

(2) . . . *[A]ny occupant of a dwelling* is justified in using any degree of physical force, including deadly physical force, against another person when that other person has made an unlawful entry into the dwelling, and when the occupant has a reasonable belief that such other person has committed a crime in the dwelling in addition to the uninvited entry, or is committing or intends to commit a crime against a person or property in addition to the uninvited entry, and when the occupant reasonably believes that such other person might use any physical force, no matter how slight, against any occupant.

(3) *Any occupant of a dwelling* using physical force, including deadly physical force, in accordance with the provisions of subsection (2) of this section shall be immune from criminal prosecution for the use of such force.

§ 18-1-704.5(1)-(3) (emphasis added).

¶ 14     When a defendant moves to dismiss the charges pursuant to section 18-1-704.5 before trial, the defendant bears the burden of proving by a preponderance of the evidence that the elements of statutory immunity are met. *People v. Guenther*, 740 P.2d 971, 980-81 (Colo. 1987). The defendant must prove that

6

(1) another person made an unlawful entry into the defendant's dwelling; (2) the defendant had a reasonable belief that such other person had committed a crime in the dwelling in addition to the uninvited entry, or was committing or intended to commit a crime against a person or property in addition to the uninvited entry; (3) the defendant reasonably believed that such other person might use physical force, no matter how slight, against any occupant of the dwelling; and (4) the defendant used force against the person who actually made the unlawful entry into the dwelling.

*Id.* at 981.[2]

¶ 15     If the pretrial motion to dismiss is denied, the defendant may raise the statutory conditions set forth in section 18-1-704.5 as an affirmative defense at trial.  *Id.*

---

[2] The ethical origin of this legal concept, also known as the "castle doctrine," may be traced to a verse in the Book of Exodus, chapter 22, verse 1, which provides: "If a thief be found tunneling in, and be smitten so that he dies, there shall be no bloodguiltiness for him." The Babylonian Talmud in Tractate Sanhedrin, chapter 8, expounds upon this situation, known as "*Ba BaMachteret*," explaining that the verse holds the occupant of the dwelling not liable for murder because it presumes a person will not stand idly by while someone takes his property.  If the occupant does try to defend his property, knowing the thief had expended the effort to break in to the dwelling, the occupant may presume the thief intends to use deadly force to take the property, and thus the occupant may use deadly force to defend himself.  Sanhedrin 72a.

### III. Whether a Prison Cell Is a Dwelling
### Under Section 18-1-704.5

¶ 16    The People first contend that Alaniz was not entitled to immunity under section 18-1-704.5 because a prison cell is not a dwelling for purposes of that statute. We disagree.

### A.    Preservation

¶ 17    As an initial matter, the parties dispute whether this issue was preserved for appeal. Alaniz asserts that this issue is unpreserved and unreviewable because, as the district court stated in its order, the People conceded that a prison cell is a dwelling under section 18-1-704.5.[3] The People contend that the issue was preserved.

¶ 18    In their written response to Alaniz's motion to dismiss, the People stated that "[a] prison cell can be considered a dwelling as it is used for habitation. The normal sense in which this is seen is in burglary prosecutions." The People cited *People v. Nichols*, 920 P.2d

---

[3] Alaniz also requests that we strike the People's opening brief because it does not address preservation of the issues or include "a citation to the precise location in the record where the issue was raised and ruled on," as required under the appellate rules in effect at the time the brief was filed. *See* C.A.R. 28(k) (2015). Although the brief does not comply with the appellate rules, we exercise our discretion to consider it. *See People v. Perry*, 252 P.3d 45, 46 (Colo. App. 2010) (accepting briefs as filed despite noncompliance with appellate rules).

901, 902 (Colo. App. 1996), which held that a jail cell was a dwelling for purposes of second degree burglary. The meaning of the term "dwelling" was not addressed anywhere else in the motion.

¶ 19 At the hearing, the defense argued that Alaniz's cell was a dwelling for purposes of "make-my-day" immunity and stated that the prosecution had conceded the issue. Later, during the prosecutor's arguments, the court stated, "[T]he way I understand your motion[,] you have conceded it's a dwelling." The prosecutor responded:

> I think the Court needs to make a further finding because all the case law does go to burglaries[.] I was unable to find any case law that comes to "Make My Day" defense[.] I think it's fairly settled these are considered dwellings and that's going to be a finding made by the. [sic]

The parties did not address the issue again during the remainder of the hearing.

¶ 20 As the court noted in its order, the prosecutor did not challenge the interpretation of "dwelling" set forth in the burglary cases, nor did he argue that that term should be interpreted differently in the context of "make-my-day" immunity. Nevertheless, the People argue that the prosecutor preserved the

9

issue by stating that there was no case law directly on point and requesting that the court make a "further finding."

¶ 21    Assuming that the prosecutor's statement adequately preserved the issue for appeal, we conclude that the People's argument fails on the merits.

B.    Standard of Review

¶ 22    Statutory interpretation is a question of law that we review de novo. *People v. Turecek*, 2012 COA 59, ¶ 9. Our primary purpose is to ascertain and give effect to the intent of the General Assembly. *Id.* We first look to the language of the statute, giving words and phrases their plain and ordinary meaning. *Id.* The General Assembly may furnish its own definitions of words and phrases in order to guide and direct judicial determination of the intent of the legislation although such definitions may differ from ordinary usage. *People v. Swain*, 959 P.2d 426, 429 (Colo. 1998). If the General Assembly has defined a statutory term, we must apply that definition. *Id.*

¶ 23    If the statute is unambiguous, we apply it as written. *Turecek*, ¶ 11. If the statute is ambiguous, however, "then we may consider prior law, legislative history, the consequences of a given

10

construction, and the underlying purpose or policy of the statute."
*Id.*

### C.     Applicable Law

¶ 24     Section 18-1-704.5(2)-(3) grants immunity to "[a]ny occupant of a dwelling" for using force under the circumstances set forth in the statute.  "Dwelling" is not defined in the current version of section 18-1-704.5, which was in effect at the time of the charged offenses.[4]  However, the criminal code's definitional section states that a dwelling is "a building which is used, intended to be used, or usually used by a person for habitation."  § 18-1-901(3)(g), C.R.S. 2015.

¶ 25     Colorado courts have broadly interpreted the term "dwelling" as defined in section 18-1-901(3)(g).  *See People v. Jiminez*, 651 P.2d 395, 396 (Colo. 1982) (burglary case holding that an attached garage was a dwelling); *People v. Germany*, 41 Colo. App. 304, 308, 586 P.2d 1006, 1009 (1978) (burglary case holding that a hospital

---

[4] The General Assembly recently enacted an amendment to the statute, which has not yet taken effect, that provides, "[a]s used in this section, unless the context otherwise requires, 'dwelling' does not include any place of habitation in a detention facility, as defined in section 18-8-211(4)."  Ch. 87, sec. 1, § 18-1-704.5, 2016 Colo. Sess. Laws 245 (effective Aug. 10, 2016).

room was a dwelling), *rev'd on other grounds*, 198 Colo. 337, 599 P.2d 904 (1979). *Germany* reasoned that the term "dwelling" encompassed hotel rooms and hospital rooms, although they are subunits of a larger building, because "those rooms are habitually used as a place where persons sleep." 41 Colo. App. at 308, 586 P.2d at 1009.

¶ 26    Citing *Germany*, the division in *Nichols* concluded that a jail cell qualified as a dwelling for purposes of second degree burglary because it was "used by persons for habitation." 920 P.2d at 902. The defendant in *Nichols* entered another inmate's cell and stole his personal commissary items. *Id.* The division stated:

> Merely because the victim could not refuse guards entry to his cell does not mean he had no right or reasonable expectation that he could exclude other inmates. Such right to exclude other inmates is indicated by the fact that the cells had doors that could be locked from the inside.

*Id.* The division also cited two out-of-state cases applying the term "dwelling" to detention facilities. *See Sioux Falls Cable Television v. South Dakota*, 838 F.2d 249, 255 (8th Cir. 1988) (prison cell was a dwelling for purposes of a cable television statute); *Bousman v.*

12

*State*, 338 N.E.2d 723, 726 (Ind. Ct. App. 1975) (county jail was a dwelling for purposes of burglary statute).

¶ 27    In *People v. Cushinberry*, a division of this court applied the definition of dwelling from section 18-1-901(3)(g) to the "make-my-day" statute.  855 P.2d 18, 19 (Colo. App. 1992).  The division concluded that the common areas of an apartment building were not a dwelling for purposes of "make-my-day" immunity because those areas were not part of the defendant's apartment and were used by other tenants and their guests.  *Id.*

### D.    Analysis

¶ 28    For the same reasons set forth in *Nichols,* we conclude that Alaniz's prison cell meets the definition of dwelling in section 18-1-901(3)(g) because it was used by persons for habitation.  *See Nichols*, 920 P.2d at 901.  Alaniz presented evidence at the hearing that prisoners in his unit slept in their cells, stored personal belongings there, and could lock or unlock their own cell doors.  *See id.*  On this record, Alaniz's prison cell constituted a dwelling as that term is defined in section 18-1-901(3)(g).

¶ 29    We further conclude, as did the division in *Cushinberry*, that the definition of dwelling in section 18-1-901(3)(g) applies to the

immunity provisions of section 18-1-704.5. *See Cushinberry*, 855 P.2d at 19. Definitions set forth in the criminal code apply "wherever the same term is used in the same sense in another section of this title unless the definition is specifically limited or the context indicates that it is inapplicable." § 18-1-901(1). Section 18-1-704.5 does not specifically limit the term "dwelling" for purposes of "make-my-day" immunity, and nothing in the language of that statute suggests that that the definition set forth in section 18-1-901(3)(g) is inapplicable.

¶ 30    The People rely on subsection (1) of the immunity statute, which states: "The general assembly hereby recognizes that the citizens of Colorado have a right to expect absolute safety within their own homes." § 18-1-704.5(1). Based on this provision, the People argue that section 18-1-704.5 immunity is not available in the prison context because incarcerated felons lose many of the rights and privileges available to other Colorado citizens. We are not persuaded.

¶ 31    Subsections (2) and (3), which set forth the scope and requirements of "make-my-day" immunity, do not limit the immunity to "citizens of Colorado . . . within their own homes."

14

§ 18-1-704.5(1). Instead, those subsections extend immunity to "[a]ny occupant of a dwelling" who uses force under the circumstances described. § 18-1-704.5(2)-(3). We presume that the legislature knows the legal import of the words it uses. *Guenther*, 740 P.2d at 976. At the time this statute was enacted, the term "dwelling" was defined in the criminal code and had been broadly interpreted by Colorado courts, including in nonresidential settings such as hospital rooms. *See Jiminez*, 651 P.2d at 396; *Germany*, 41 Colo. App. at 308, 586 P.2d at 1009. The language of section 18-1-704.5 gives no indication that the legislature intended a different definition of "dwelling" to apply to "make-my-day" immunity.

¶ 32     Accordingly, we conclude that the definition set forth in section 18-1-901(3)(g) applies, and Alaniz's cell was a dwelling for purposes of "make-my-day" immunity under the plain language of the statute.

¶ 33     We also reject the People's assertion that, because burglary is a property crime, the broad interpretation of "dwelling" developed in the burglary cases should not apply in the context of "make-my-day" immunity. Both statutory provisions offer protections against

15

intruders who intend to commit a crime against either persons or property. *See* §§ 18-1-704.5(2); 18-4-203, C.R.S. 2015 (second degree burglary). And as noted, nothing in the text of section 18-1-704.5 suggests that the legislature intended the term "dwelling" to apply more narrowly in the "make-my-day" context than in other provisions of the criminal code.

¶ 34     The People rely on *United States v. Slocum,* a federal case which held that an entire prison was not a dwelling for purposes of determining whether a defendant asserting self-defense had a duty to retreat. 486 F. Supp. 2d 1104, 1112 (C.D. Cal. 2007). In that case, however, the defendant left his own cell and attacked the victim in another part of the prison. *Id.* at 1107. Thus, *Slocum* did not involve a claim of "make-my-day" immunity by an inmate in his own cell, and it did not address whether an individual prison cell like the one occupied by Alaniz could constitute a dwelling.

¶ 35     The People also rely on out-of-state cases holding that affirmative defenses such as self-defense and duress are not available to prisoners charged with possession of deadly weapons. *See, e.g., State v. Perkins*, 149 So. 3d 206, 209 (La. 2014); *People v. Rau*, 436 N.W.2d 409, 411 (Mich. Ct. App. 1989). But those cases

16

did not involve statutory immunity provisions similar to section 18-1-704.5. And here, Alaniz claimed immunity for charges of murder and assault, not possession of a weapon. Accordingly, those cases are also inapposite for that reason.

¶ 36    The People argue that public policy reasons should prevent incarcerated felons from claiming "make-my-day" immunity. However, "the wisdom of such legislation is not for us to decide." *Guenther*, 740 P.2d at 980. The General Assembly is free to amend the statute based on such concerns, and indeed has already done so, but we must apply the statute in effect at the time of the charged offense.[5] We have concluded that Alaniz's cell is a dwelling under the plain language of section 18-1-704.5, and we may not deny him the protections of the statute on public policy grounds.

¶ 37    Finally, we reject the People's argument that permitting inmates to claim "make-my-day" immunity leads to an absurd result because it sanctions possession of deadly weapons by incarcerated felons. Section 18-1-704.5 grants immunity from

---

[5] Although the parties do not address the recent amendment in their briefs, we note that courts presume that the General Assembly intends to change the law, not clarify it, when it amends a statute. *People v. Randell*, 2012 COA 108, ¶ 18.

17

prosecution only for an occupant's use of force against an intruder. It does not permit incarcerated felons to possess deadly weapons, nor does it prevent them from being prosecuted for that offense.

¶ 38     For the reasons set forth above, we conclude that Alaniz's cell was a dwelling for purposes of section 18-1-704.5 and, therefore, he was entitled to claim immunity under that statute.

## IV.     Use of Force Against the Victim

¶ 39     The People next contend that the court erred in dismissing the charges because Alaniz failed to prove that he used physical force against the victim. We disagree.

¶ 40     We defer to the court's factual findings unless they are so clearly erroneous as to find no support in the record. *Sanchez-Martinez v. People*, 250 P.3d 1248, 1254 (Colo. 2011). We review de novo whether the court applied the correct legal standard. *See People v. Hughes*, 252 P.3d 1118, 1121 (Colo. 2011).

¶ 41     We are not persuaded that Alaniz was required to present evidence proving his own use of force at the pretrial hearing in order to receive immunity under section 18-1-704.5. The People charged Alaniz with murdering and assaulting the victim, and they never argued that he was barred from immunity because he did not

18

use any physical force against the victim. Under these circumstances, we conclude that Alaniz was merely required to establish that circumstances justifying the charged use of force were present, as set forth in section 18-1-704.5(2)-(3). Nothing in the language of that statute supports the People's assertion that he was required to "explain[] the entirety of [his] actions" at the hearing in order to obtain immunity.

¶ 42 The People rely on *Guenther*, which states that a defendant claiming immunity under section 18-1-704.5 must prove that he "used force against the person who actually made the unlawful entry into the dwelling." 740 P.2d at 981. In that case, however, the defendant claimed immunity for shooting both an intruder in his home and other people who remained outside. *Id.* at 973-74. The supreme court held that section 18-1-704.5 provides immunity "only for force used against one who has made an unlawful entry into the dwelling, and . . . does not extend to force used against non-entrants." *Id.* at 979. Thus, the language relied on by the People merely requires proof that the force for which the defendant claims immunity was directed against the intruder and not someone else. That issue did not arise in Alaniz's case.

19

¶ 43    The People do not challenge the court's findings with respect to the other requirements for immunity under section 18-1-704.5, namely, that the victim's entry was unlawful and that Alaniz had a reasonable belief that the victim intended to commit a crime and might use force against an occupant. *See id.*; *Guenther*, 740 P.2d at 981. We conclude that those findings were sufficient to support the court's ruling that Alaniz was entitled to immunity under section 18-1-704.5. Accordingly, the court did not err in granting Alaniz's motion to dismiss the charges.

## V.    Conclusion

¶ 44    The order is affirmed.

JUDGE GRAHAM and JUDGE BOORAS concur.

20