22CA1786 Peo v Johnson 12-18-2025

COLORADO COURT OF APPEALS

Court of Appeals No. 22CA1786
Arapahoe County District Court No. 21CR671
Honorable Ben L. Leutwyler III, Judge

The People of the State of Colorado,

Plaintiff-Appellee,

v.

De Ovay Malik Johnson,

Defendant-Appellant.

JUDGMENT AFFIRMED AND CASE
REMANDED WITH DIRECTIONS

Division I
Opinion by JUDGE SCHUTZ
J. Jones and Grove, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced December 18, 2025

Philip J. Weiser, Attorney General, William G. Kozeliski, Senior Assistant
Attorney General, Denver, Colorado, for Plaintiff-Appellee

Megan A. Ring, Colorado State Public Defender, Jason C. Middleton, Deputy
State Public Defender, Denver, Colorado, for Defendant-Appellant

¶ 1     Defendant, De'oveya[1] Malik Johnson, appeals his judgment of conviction for first degree burglary, second degree assault, and menacing. We affirm the judgment and remand with instructions to correct the mittimus to reflect the merger of the second degree assault and menacing convictions into the first degree burglary conviction.

## I.    Background and Procedural History

### A.    Assault and Arrest

¶ 2     On an early June morning, Johnson and Italia King[2] matched on Tinder, a dating application. They arranged to meet at King's apartment. They watched television, talked, consumed a couple of shots of alcohol, and smoked a small amount of marijuana. At one point, while they sat on King's couch, Johnson showed King his handgun.

---

[1] We note that the final order stylizes Mr. Johnson's name as "De Ovay" and that different parts of the record stylize his name as "De Ovay," "DeOvay," and "Deoveya." However, according to Johnson's counsel, the correct version of his name is "De'oveya" and the briefs on appeal stylize his name in that manner. We adopt this same nomenclature, but emphasize that no matter how stylized, the documents entered in the trial court and on appeal refer to the same person.

[2] When this incident occurred Ms. King's last name was Moore; she has since married and changed her last name.

¶ 3    King testified that the date took a turn after Johnson became "extremely upset" when she declined his request for oral sex. King asked Johnson to leave her apartment, at which point he threatened to steal her car, and she started recording him on her phone.

¶ 4    Johnson slapped the phone out of King's hand and pointed the gun at her head. They tussled until Johnson repeatedly pistol-whipped her in the head and violently dragged her through the apartment. He also kicked her several times while she was on the floor. King suffered significant eye injuries and a concussion during the assault and lost consciousness more than once. Johnson eventually left the apartment, and King went to a neighbor for help.

¶ 5    When the first responders arrived, King tried to show them Johnson's Tinder profile but could not find the page, so she showed them Johnson's Instagram account and identified him through two pictures. The pictures were from an Instagram profile with the name "deoveyajohnson." The first picture depicted an individual whom King identified as Johnson, posing from the side with a firearm sticking out of the front pocket of his jeans (exhibit 20). King also located a front-facing picture of the same individual

(exhibit 21) from the same profile and again identified him as the man who attacked her.

¶ 6    The prosecution charged Johnson with eight counts including first degree burglary, second degree assault, menacing, obstruction of telephone or telegraph service, violation of a protection order,[3] criminal mischief, and two crime of violence sentence enhancers.

## B.    Trial and Conviction

¶ 7    Johnson moved to sever the violation of a protection order (VPO) count on the grounds that joinder was prejudicial under Crim. P. 14.  Specifically, Johnson argued that evidence of his prior criminal activity would violate his right to a fair trial because the jury, after learning of a protection order related to another woman, may have inferred that he had a proclivity for violence towards women.

¶ 8    After a pretrial hearing, the trial court denied the motion but instructed the parties to redact the portions of the protection order that were unduly prejudicial.  During trial, the court dismissed the VPO count as a discovery sanction against the prosecution.  After

_____

[3] As discussed in more detail below, the violation of a protection order count related to a different person.

3

doing so, the court instructed the jury that it would not consider the VPO count.

¶9 The jury found Johnson guilty of all the remaining charges, and the court sentenced him to a controlling term of twenty-five years in the custody of the Department of Corrections. This appeal followed.

## II. VPO Claims

¶10 Johnson argues that the trial court abused its discretion by failing to sever the VPO count and not excluding all evidence related to the VPO count. We disagree.

### A. Additional Facts

¶11 Johnson had a prior criminal conviction and resulting protection order for the benefit of a victim in an unrelated case. The protection order prohibited Johnson from possessing a gun. Before trial, Johnson's counsel moved to sever the VPO count from the remaining counts.

¶12 At a motions hearing, the trial court asked the parties to confer to determine whether there was "a way to redact [the prejudicial] information such that [the protection order] simply sa[id] that Mr. Johnson was under an order from the court to not do

something that he ha[d] been alleged to have done?" The prosecution replied that it was possible, and the trial court ordered the parties to confer with each other and work on redactions to the protection order to see if they could reach an acceptable result. The court told counsel they could readdress the issue at the pretrial readiness conference if they could not reach a resolution.

¶ 13 Thereafter, the prosecution redacted from the protection order the victim's name, the criminal case number associated with the offense, all references to stalking and harassment prohibitions, and all references to the victim's gender.

¶ 14 On the morning of trial, Johnson's counsel renewed their objection to admitting the protection order on the basis that it would lead to an "impermissible inference that Johnson had previously been in trouble." They requested additional redactions including removing the language that Johnson was ordered to remain a certain distance from the victim in the other matter. The prosecutor indicated that she would make the additional redactions, and the court told defense counsel to "let [it] know" if "there's still a disagreement" after those changes were made. Defense counsel said, "Perfect."

5

¶ 15    Johnson's counsel renewed their prior objections when the redacted protection order was offered at trial, which the trial court overruled.  The investigator who identified the redacted protection order testified that it restricted Johnson from possessing a firearm, that Johnson was advised of the protection order in January 2020, and that Johnson knew he was not allowed to possess a firearm.

¶ 16    The next day, the trial court dismissed the VPO count as a sanction for the prosecution's discovery violation.  The court allowed the protection order to remain part of the record but withdrew it as an exhibit.  The court also found that the prosecution could still use the investigator's testimony that Johnson knew that he should not have a gun.  Johnson's counsel did not object or ask for additional jury instructions about the dismissed VPO count.

¶ 17    The trial court subsequently instructed the jury as follows: "[L]adies and gentlemen, during one of my conferences with the attorneys, it was determined that the parties will not be proceeding on the charge of violation of a protection order, and so that is not a charge that this jury will consider."  The trial court did not instruct

the jury to disregard the investigator's testimony related to the protection order.

### B. Standard of Review and Applicable Law

¶ 18    We review a trial court's decision not to sever charges for an abuse of discretion. *People v. Garcia,* 2012 COA 79, ¶ 23. A defendant challenging a court's decision to sever must show that joinder caused them "'actual prejudice' and that the trier of fact was unable to separate the facts and legal principles applicable to each offense." *Bondsteel v. People,* 2019 CO 26, ¶ 59 (quoting *Garcia,* ¶ 28).

¶ 19    We also review a court's "decision to give, or not to give, a particular jury instruction for an abuse of discretion." *People v. Payne,* 2019 COA 167, ¶ 16. Under this standard, we will not disturb the court's decision absent a showing that it was manifestly arbitrary, unreasonable, or unfair or was based on a misapprehension or misapplication of the law. *People v. Elmarr,* 2015 CO 53, ¶ 20. A trial court is not obligated to give a limiting instruction unless it is required by a statute or requested by a party and warranted by the evidence. *Davis v. People,* 2013 CO 57, ¶ 21.

¶ 20    The parties dispute whether Johnson properly preserved his

VPO arguments.  The People concede that while Johnson preserved

his argument as it relates to Crim. P. 14, he did not preserve his

argument under Crim. P. 8(a)(2) and did not preserve his contention

that the trial court erred by failing to properly instruct the jury to

disregard the evidence related to the VPO count.

¶ 21    We review unpreserved contentions for plain error.  *People v.*

*Tallent*, 2021 CO 68, ¶¶ 11-12.  Plain error occurs "if it is obvious

and substantial and so undermines the fundamental fairness of the

trial itself as to cast serious doubt on the reliability of the judgment

of conviction."  *People v. Rediger*, 2018 CO 32, ¶ 48.

¶ 22    Although he relies on Crim. P. 8(a)(2) on appeal, in the trial

court Johnson made no argument under Crim. P. 8.  Thus, we

agree with the People that the Crim. P. 8 arguments were not

preserved, and we review them for plain error.  *See Tallent*, ¶ 12.

### 1.    Severance

¶ 23    Criminal offenses may be tried together under Crim. P. 8(a)(2)

if they are "of the same or similar character or are based on two or

more acts or transactions connected together."  If, however, it

appears that a criminal defendant will be prejudiced by the joinder

of offenses, "the court may order an election or separate trials of counts . . . or provide whatever other relief justice requires."  Crim. P. 14.

## 2. The Admissibility of Evidence

¶ 24    Relevant evidence — that which has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence," CRE 401 — is admissible unless its probative value is "substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence," CRE 403.

¶ 25    Evidence of "any other crime, wrong, or act is not admissible to prove a [defendant's] character in order to show that on a particular occasion the [defendant] acted in conformity with the character."  CRE 404(b)(1).  But such evidence may be used to prove "another purpose, such as . . . motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident."  CRE 404(b)(2).

¶ 26    To determine whether evidence is admissible under CRE 404(b) we apply the four-part test announced in *People v. Spoto*, 795 P.2d 1314 (Colo. 1990). That test asks whether (1) the evidence relates to a material fact; (2) the evidence is logically relevant; (3) the logical relevance of the evidence is independent of the inference that the defendant acted in conformity with a bad character; and (4) the probative value of the evidence is substantially outweighed by the danger of unfair prejudice. *Id.* at 1318.

## C.    Analysis

¶ 27    Johnson argues that the VPO count should have been severed from the remaining counts under Crim. P. 14 because it improperly suggested prior criminal activity and a propensity for violence against women. He also argues that evidence pertaining to the VPO count was not admissible under Crim. P. 8(a)(2) because the two cases did not arise out of two or more acts connected together. The People respond that joinder of the VPO charge was required under Crim. P. 8(a)(1) because that charge and the burglary-related charges were "actually known to the prosecuting attorney at the time of commencing the prosecution," and "they [were] based on the

10

same act or series of acts arising from the same criminal episode."

Alternatively, the People argue that the trial court did not abuse its discretion by permissively joining the counts under Crim. P. 8(a)(2) because the VPO charge was based on Johnson's possession of the gun in King's apartment, and the act of possessing the weapon supported the burglary, assault, and menacing charges.

¶ 28    We reject Johnson's argument that the VPO and the other charges were not based on two acts connected together. Johnson was aware of the protection order and that he was not allowed to use or possess a firearm. And Johnson used the firearm during the burglary and assault. Thus, the VPO, burglary, assault, and menacing charges were arguably connected together, and we cannot say the trial court erred, much less plainly erred, by not sua sponte severing the charges based on Crim. P. 8. *See Hagos v. People*, 2012 CO 63, ¶ 14.

¶ 29    We are also unpersuaded by Johnson's assertion that the jury's mere knowledge of the existence of the redacted protection order prejudiced him within the meaning of Crim. P. 14. Johnson reasons that "although not a prior conviction, the VPO charge and

related protection order clearly implicated Mr. Johnson's character and indicated prior criminality." Johnson preserved this argument.

¶ 30     As Johnson notes, the trial court addressed this issue by encouraging the parties to redact anything in the protection order that was perceived to be prejudicial. Thus, the court did not conduct a typical prejudice or CRE 404(b) analysis.

¶ 31     However, despite multiple instructions to advise the court if the parties could not reach an acceptable resolution about admitting the protection order, Johnson's counsel did not identify any problems with the redactions after they were completed. Additionally, counsel repeatedly asked for — and obtained — all their requested redactions to minimize the prejudice of the protection order. With these redactions, the protection order simply informed the jury that Johnson was prohibited from possessing a gun and knew of that prohibition.

¶ 32     True, as Johnson argues on appeal, the trial court did not conduct a CRE 404(b) analysis addressing whether evidence of the VPO and burglary charges would have been cross-admissible if the charges had been tried separately. *See Bondsteel*, ¶ 44 (A CRE 404(b) analysis "arguably informs the question of whether the

12

joinder . . . was prejudicial."). Johnson concedes that evidence supporting the burglary-related events would have been admissible at a separate trial of the VPO count because Johnson allegedly possessed a gun during those events. But he argues that the protection order would not have been admitted at a separate trial of the burglary-related offenses.

¶ 33     Even if we assume, for the sake of argument, that the protection order would not have been admissible at a separate trial of the burglary-related offenses, that simply returns us to the issue of whether the admission of the redacted protection order and the investigator's limited testimony concerning its redacted content prejudiced Johnson. We conclude that it did not. As previously noted, after the court's rulings, the jury learned only that a court order prohibited Johnson from possessing a firearm and that he knew of that order. Given the inflammatory nature of the facts surrounding the burglary-related offenses, we do not believe the jury's knowledge of the existence of the protection order would have further inflamed its understanding of the facts.

¶ 34     Moreover, the evidence supporting the burglary-related charges was substantial. King directly identified Johnson as the

perpetrator. She was also able to access his Instagram photos and confirmed her identification based on two photos from that profile. Given this direct evidence of Johnson's guilt on the burglary-related offenses, we perceive no meaningful prejudice associated with the redacted protection order and related testimony. *See Bondsteel*, ¶ 64 (assessing the strength of the evidence against the defendant when evaluating a Crim. P. 14 prejudice analysis).

¶ 35 We also reject Johnson's argument that the jury was not able to differentiate the facts and legal principles applicable to each offense. *See id.* at ¶ 59. Because it was dismissed, the jury was not asked to make findings or apply legal principles to the VPO charge. Thus, we perceive no reason why the redacted protection order would have led to jury confusion in assessing the remaining charges.

¶ 36 Johnson next claims that after the trial court dismissed the VPO charge, it should have given the jury a limiting instruction to mitigate any potential concerns that the jury may improperly consider the evidence related to the charge. The People respond that the trial court properly told the jury that it would not consider

the VPO charge, and if Johnson wanted additional limiting instructions, his counsel should have asked the court.

¶ 37    Again, Johnson's claim fails.  The court properly instructed the jury not to consider the VPO count.  As it relates to the claim that the jury should have been given an additional limiting instruction, unless statutorily mandated and warranted by the evidence, a trial court is not required to give a limiting instruction absent a party's request (and entitlement to the requested instruction under the evidence).  *See Davis*, ¶ 21.

¶ 38    Finally, Johnson notes that during voir dire, the court read to the prospective jurors the substance of the VPO charge, including that it was intended to protect another woman from imminent danger to life or health.  But the court informed the prospective jurors that these were simply allegations made by the People and had no evidentiary value:

> The charges are not evidence of anything; they are merely the People's claims that Mr. Johnson has committed certain crimes.  They are not evidence that he has committed any crime, and no juror should assume that a defendant — and in this particular case Mr. Johnson — has committed a crime just because he's charged with doing so.

15

The jury is presumed to have followed these instructions. *See Dupont v. Preston*, 9 P.3d 1193, 1200 (Colo. App. 2000) ("[A] jury is presumed to be capable of following instructions and presumed to follow a trial court's instructions."), *aff'd on other grounds*, 35 P.3d 433 (Colo. 2001). Because the reading of charges had no evidentiary value, we discern no abuse of discretion in the trial court's failure to provide the jury with any additional instructions.

## III. Evidence Claims

¶ 39 Johnson contends that the trial court erred by admitting exhibit 20 because it showed him with a gun and was therefore unduly prejudicial under CRE 403. We disagree.

### A. Standard of Review and Applicable Law

¶ 40 As previously noted, we review a trial court's evidentiary rulings for an abuse of discretion. *Elmarr*, ¶ 20. "An issue is unpreserved for review when, among other things, . . an objection or request was made in the trial court, but on grounds different from those raised on appeal . . . ." *People v. Ujaama*, 2012 COA 36, ¶ 37.

¶ 41 As mentioned, evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the

determination of the action more probable or less probable than it would be without the evidence." CRE 401. Relevant evidence may be excluded, however, "if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." CRE 403. CRE 404 prohibits the admission of evidence of other crimes, wrongs, or acts "to prove a person's character in order to show that on a particular occasion the person acted in conformity with the character." CRE 404(b)(1).

## B. Analysis

¶ 42 Johnson argues that the trial court abused its discretion by admitting exhibit 20 over his counsel's objection because the image depicts him with a handgun protruding from his jeans pocket. At trial, Johnson's counsel argued that King could not testify that the gun shown in the photo was the gun used during the assault, she had not indicated when the photo was taken, and King could not be certain whether Johnson actually created the Instagram profile.

¶ 43 On appeal, Johnson argues for the first time that the trial court erred by not conducting a CRE 404(b) analysis. Specifically,

17

he argues that even if the picture was relevant, depicting him with a firearm was so prejudicial that the court should have either wholly excluded the photo or cropped it so that the gun was not visible, especially considering that another picture — exhibit 21 — was available and contained no information that could lead to an improper inference.  Because this argument was not raised below, we review it for plain error.

¶ 44     The People counter that the trial court did not abuse its discretion by finding that the image was relevant because Johnson's theory of the case was that someone else attacked King, so the photographs were relevant to King's initial identification of Johnson.

¶ 45     We discern no error in the trial court's admission of exhibit 20. King's credibility generally and her identification of Johnson based on these pictures particularly — which she accessed shortly after police arrived — were clearly relevant.  Indeed, the credibility of King's identification of Johnson was essential to this case.  Exhibit 20 was a full body picture, and King relied on it in confirming that Johnson was the person who had attacked her.  King testified regarding how she accessed the photo on her phone and that the picture showed it came from Johnson's Instagram profile, and any

18

issues with respect to the date on which the picture was taken — or the speculative assertion that the social media profile could have been created without Johnson's knowledge — go to the weight of the evidence, not its admissibility.

¶ 46 We also are unpersuaded that the admission of exhibit 20 violated CRE 403 or 404(b) because depicting Johnson with a gun was unduly prejudicial or evidence of his bad character. First, we reject the notion that the possession of a handgun is automatically indicative of bad character; after all, many people of good character carry handguns. Moreover, exhibit 20 does not depict Johnson in a way that is particularly menacing or threatening. Given these facts, we cannot conclude that the court abused its discretion — much less plainly erred — by admitting exhibit 20.

## IV. Merger Claims

¶ 47 Johnson contends that his second degree assault and menacing convictions must be merged into his first degree burglary conviction. We agree.

### A. Standard of Review and Applicable Law

¶ 48 We review a defendant's claim that their conviction violates their constitutional protection against double jeopardy de novo. *Garcia v. People*, 2023 CO 41, ¶ 13.

### 1. Double Jeopardy

¶ 49 The United States and Colorado Constitutions prohibit placing someone in jeopardy twice for the same offense. U.S. Const. amends. V, XIV; Colo. Const. art. II, § 18. "As relevant here, these '[c]onstitutional double-jeopardy protections preclude the imposition of multiple punishments when the General Assembly has not "conferred specific authorization for multiple punishments."'" *Whiteaker v. People*, 2024 CO 25, ¶ 10 (quoting *Page v. People*, 2017 CO 88, ¶ 8).

¶ 50 "[T]he General Assembly has not authorized multiple punishments in the form of two convictions for the same conduct when the lesser offense is included in the greater offense." *Id.* "Accordingly, multiplicitous convictions run afoul of double jeopardy principles." *Id.* Thus, a sentencing court must merge an offense when "[i]t is established by proof of the same or less than all

the facts required to establish the commission of the offense charged." § 18-1-408(1)(a), (5)(a), C.R.S. 2025.

¶ 51     An offense is a lesser included offense if "at least one of the ways to commit the greater offense necessarily establishes all the elements of the lesser offense." *Whiteaker*, ¶ 18.  When the General Assembly defines a statutory term, and the statute is unambiguous, we must apply that definition as written.  *People v. Alaniz*, 2016 COA 101, ¶¶ 22-23.

¶ 52     In addition to lesser included offenses, a second type of multiplicity "involves a series of repeated acts that are charged as separate crimes even though they are part of a continuous transaction and therefore actually one crime."  *Woellhaf v. People*, 105 P.3d 209, 214 (Colo. 2005).  Whether convictions must be merged because they are multiplicitous is a question of law that we review de novo.  *People v. Robinson*, 2022 COA 124, ¶ 8.

¶ 53     When determining whether two or more charged offenses are factually distinct and thus may support more than one conviction, we may consider

> [(1)] whether the acts charged have occurred at different times, were separated by intervening events, or occurred at the same place;

> [(2)] whether there are separate instances of volitional acts involving a new volitional departure . . . leading to a fresh impulse; and [(3)] whether the defendant had time to reflect before embarking on a "new outrage."

*People v. Manzanares*, 2020 COA 140M, ¶ 64 (quoting *Quintano v. People*, 105 P.3d 585, 591-92 (Colo. 2005)). We may also consider the defendant's intent in committing the various acts. *People v. Wagner*, 2018 COA 68, ¶ 13. "[N]o one factor is dispositive and the inquiry ultimately focuses on 'all the evidence introduced at trial to determine whether the evidence on which the jury relied for conviction was sufficient to support distinct and separate offenses.'" *Id.* (quoting *Quintano*, 105 P.3d at 592).

### 2. First Degree Burglary, Second Degree Assault, and Menacing

¶ 54    The statute defining first degree burglary provides as follows:

> A person commits first degree burglary if the person knowingly enters unlawfully, or remains unlawfully after a lawful . . . entry, in a[n] . . . occupied structure with intent to commit therein a crime . . . against another person . . . and if in effecting entry or while in the . . . occupied structure or in immediate flight therefrom, the person . . . *assaults or menaces any person, . . . or the person . . . uses a deadly weapon or possesses and threatens the use of a deadly weapon.*

§ 18-4-202(1), C.R.S. 2025 (emphasis added).

22

¶ 55    Under the statute's plain language, a person may commit first degree burglary by unlawfully entering or remaining in an occupied structure with the intent to commit a crime against another person and, while in the structure, either assaulting or menacing another person or possessing a deadly weapon.

## B.    Analysis

¶ 56    Johnson contends that his separate convictions for second degree assault and menacing must merge into the first degree burglary conviction because both offenses are expressly designated as means by which a person can commit first degree burglary. *See Whiteaker,* ¶ 27 ("Here, the district court had no authority to sentence [the defendant] for both burglary and trespass — a greater offense and its lesser-included offense."); *People v. Ramirez,* 18 P.3d 822, 830 (Colo. App. 2000) ("The elements of assault or menacing must be proven in order to sustain a conviction for first degree burglary as it was charged and instructed in this case.").

¶ 57    The People concede that both menacing and second degree assault are lesser included offenses of first degree burglary. But they argue that these convictions should not merge because, as part of the sentence enhancer count, the jury found that Johnson

possessed a gun, and that fact could have formed the predicate for a first degree burglary conviction. We reject this argument for two reasons.

¶ 58 First, the jury instruction defining first degree burglary in this case referred only to second degree assault and menacing as the predicates for the first degree burglary charge. In other words, the elemental instruction for the first degree burglary count did not refer to the possession or use of a deadly weapon.

¶ 59 These circumstances distinguish *People v. Lucas*, 232 P.3d 155, 167 (Colo. App. 2009), *abrogated on other grounds by*, *People v. Miller*, 2024 COA 66, upon which the People rely, from this case. In *Lucas*, the elemental instruction on the first degree burglary charge allowed the jury to convict the defendant if "the defendant assaulted or menaced [the victim], or the defendant was armed with a deadly weapon." *Id.* But in the present case, the elemental instruction for first degree burglary allowed the jury to convict Johnson only if, during the burglary, he "committed the crime of assault or the crime of menacing against any person." In other words, the instruction did not permit the jury to convict Johnson of first degree burglary based on his use or possession of a gun during the

burglary.  Similarly, the charging document referred only to assault and menacing, not the use or possession of a gun, when describing the first degree burglary charge.

¶ 60    Therefore, the jury's finding with respect to Johnson's use or possession of a gun on the sentence enhancer count cannot serve as a predicate for the first degree burglary charge.

¶ 61    Nor are we persuaded by the People's assertion that *Callis v. People*, 692 P.2d 1045 (Colo. 1984), requires the merger of only the menacing charge.  In that case, the defendant was convicted of felony murder and the predicate felonies of first degree burglary, robbery, and first degree sexual assault.  *Id.* at 1049.  On appeal, the supreme court held "that when a defendant is convicted of multiple felonies, all of which are alleged as the legal predicates for the commission of felony murder, that felony which most directly contributes to the death of the victim should serve as the essential element of the felony murder conviction." *Id.* at 1054.  The court went on to determine that first degree sexual assault most directly contributed to the victim's death, and therefore, that count alone merged into the felony murder count.  *Id.* at 1055.

¶ 62    Applying the logic of *Callis*, the People urge us to merge only the menacing charge, thereby maximizing the jury's verdict on the remaining counts. *See Ramirez*, 18 P.3d at 831 ("[I]n deciding which convictions to retain, a court should enter as many convictions and impose as many sentences as are legally possible so as fully to effectuate the jury's verdict.").

¶ 63    Johnson, however, urges us to follow *People v. Torrez*, 2024 COA 11, ¶ 25, in which a division of this court concluded that convictions for second degree assault and attempted assault merged into the defendant's conviction for first degree burglary. But *Torrez* is distinguishable because attempted assault is a lesser included offense of second degree assault. Johnson's predicate convictions were for menacing and second degree assault, and menacing is not necessarily a lesser included offense of second degree assault. *See People v. Truesdale*, 804 P.2d 287, 289 (Colo. App. 1991) ("[U]nder the allegations and evidence appearing in the record here, we conclude that felony menacing is not a lesser included offense of second degree assault.").

¶ 64    Nonetheless, Johnson argues — and the People do not contest — that the menacing, second degree assault, and first

degree burglary charges all arose out of the same conduct. Indeed, as previously explained, the charging document describes the menacing and second degree assault charges as predicate offenses integral to first degree burglary charge. And that is the way the case was presented and argued by the People. The following excerpts from the People's closing argument are illustrative:

> And then, when Mr. Johnson wasn't getting what he wanted anymore, he started to use that gun, and he used it to not only assault her but placed her in fear of losing her life.
>
> . . . .
>
> Ladies and gentlemen, when Ms. [King] declined to perform oral sex on the defendant, he pulled out his firearm and he pointed it at her; that is threat of physical action . . . . Pointing a firearm — a firearm she knew to be loaded at her, being angry, screaming, approaching her, physically assaulting her with that weapon, struggling over that weapon, making her believe that she was not going to survive the early morning hours of June 4th of 2020. Ladies and gentlemen, there is no doubt that Mr. Johnson committed the crime of menacing.
>
> . . . .
>
> [King] tells you in that 9-1-1 call that he pointed that gun at her and then assaulted her repeatedly with it.

27

¶ 65      As charged, presented, and argued by the People, menacing and second degree assault were part of a single continuous event that was not separated by time or space. The victim was the same, and Johnson's apparent motives — whether to coerce King into acquiescing in his demands for sexual favors or abuse her for declining his advances — were the same. Thus, we agree with Johnson that the menacing conviction was multiplicitous to the assault charge.

¶ 66      Finally, Johnson and the People agree — as do we — that menacing and second degree assault are both lesser included offenses of first degree burglary. As the supreme court recently held in *Whiteaker*,

> After *Reyna-Abarca* [*v. People*, 2017 CO 15], it no longer matters whether the greater offense can be committed in a way that wouldn't encompass the lesser offense. *An offense is a lesser-included offense if at least one of the ways to commit the greater offense necessarily establishes all the elements of the lesser offense.*

*Whiteaker*, ¶ 18 (emphasis added). A conviction for first degree burglary can be based on either the commission of second degree assault or menacing while engaging in the other conduct needed to

establish burglary.  And the elements instruction on first degree burglary included both assault and menacing as predicates, and the jury returned guilty verdicts on all three of those offenses. Thus, Johnson's second degree assault and menacing convictions are both lesser included offenses of burglary.

¶ 67    These circumstances also distinguish *Callis*.  Recall that *Callis* involved a conviction for felony murder, with predicate offenses of first degree burglary, robbery, and first degree sexual assault.  692 P.2d at 1049.  The court merged the first degree sexual assault conviction because it was the most direct cause of the victim's death.  But the court did not merge the first degree burglary and robbery charges because those crimes were "not encompassed by the greater offense of felony murder."  *Id.* at 1055.  In this case, however, under both the one continuous event and the clarified strict element tests, second degree assault and menacing merge into the first degree burglary conviction.  *See Whiteaker*, ¶¶ 17-18; *Woellhaf*, 105 P.3d at 214.

## V.    Disposition

¶ 68    Johnson's first degree burglary conviction is affirmed.  We remand the case to the trial court to amend the mittimus to reflect

the merger of Johnson's second degree assault and menacing convictions into the first degree burglary conviction.

JUDGE J. JONES and JUDGE GROVE concur.