23CA0923 Peo v Goldman 04-10-2025

COLORADO COURT OF APPEALS

---

Court of Appeals No. 23CA0923
Boulder County District Court No. 21CR241
Honorable Nancy W. Salomone, Judge

---

The People of the State of Colorado,

Plaintiff-Appellant,

v.

Yechezkel Meir Goldman,

Defendant-Appellee.

---

ORDER REVERSED AND CASE
REMANDED WITH DIRECTIONS

Division IV
Opinion by JUDGE KUHN
Harris and Yun, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced April 10, 2025

---

Michael T. Dougherty, District Attorney, Adam Kendall, Chief Trial Deputy, Ryan Day, Senior Deputy District Attorney, Boulder, Colorado, for Plaintiff-Appellant

Megan A. Ring, Colorado State Public Defender, Kelly A. Corcoran, Deputy State Public Defender, Denver, Colorado, for Defendant-Appellee

¶ 1    The People appeal the district court's order dismissing their case against defendant, Yechezkel Meir Goldman, on the grounds that there was not a substantial probability he would be restored to competency to stand trial in the reasonably foreseeable future.  We reverse and remand the case to the district court for further proceedings consistent with this opinion.

## I.    Background

¶ 2    In February 2021, the prosecution charged Goldman with a single count of stalking, a class 5 felony.  *See* § 18-3-602(1)(c), (3)(a), C.R.S. 2024.  According to the probable cause affidavit for his arrest, Goldman had stalked his father's massage therapist for roughly three years.  During that period, the prosecution alleged, Goldman had shown up at the victim's work and had sent her unwanted emails about engaging in a personal relationship with him.  Goldman was released on a personal recognizance bond shortly after his arrest.

¶ 3    In June, defense counsel filed a motion to determine Goldman's competency to stand trial.  The district court made a preliminary finding of incompetency and ordered the Colorado

Department of Human Services to perform an out-of-custody competency evaluation of Goldman.[1]

¶ 4    Dr. Amanda Ferguson, a licensed psychologist, completed the initial evaluation. Dr. Ferguson determined that Goldman met the diagnostic criteria for "unspecified schizophrenia and other psychotic disorder" and "unspecified personality disorder." She also indicated that erotomanic delusional disorder was under consideration as a diagnosis. She opined that Goldman was incompetent to proceed because his delusional beliefs about the case and his perceived relationship with the victim significantly impacted his ability to understand the nature of the criminal proceedings and to effectively assist in his defense. But Dr. Ferguson also opined that, while Goldman hadn't been prescribed psychotropic medications to treat his conditions, there was a fair chance that he would be restored to competency with the use of those medications.

---

[1] The Colorado Mental Health Hospital in Pueblo (then known as the Colorado Mental Health Institute at Pueblo) coordinated the evaluation.

2

¶ 5     Based on this report, the district court found Goldman incompetent to proceed and ordered outpatient competency restoration therapy as a condition of his bond.  The court also ordered the Department to provide periodic reports detailing the status of Goldman's competency.  Over the next eighteen months, Dr. Ferguson completed six additional competency evaluations.[2]  In each report, she opined that Goldman remained incompetent to stand trial and that the likelihood of his restoration was "fair" with the use of psychotropic medications but "poor" or "guarded" without such treatment.  Dr. Ferguson stated that a psychiatric assessment and prescribed medications were "strongly recommended" under these circumstances.  In each of these reports, Dr. Ferguson also stated that, in her opinion, "there is a substantial probability that Mr. Goldman will be restored to competency within the reasonably foreseeable future."

¶ 6     Relying on Dr. Ferguson's recommendations, the district court granted the prosecution's request for a psychiatric and medication

---

[2] Dr. Ferguson also completed an eighth evaluation and filed a report, dated two weeks after the court dismissed the case, that contained the same conclusions as the others.

evaluation of Goldman and for the appointment of a court liaison to assist him with finding a prescribing physician for any medications recommended under the evaluation. Dr. Leah Brar, a forensic psychiatrist, completed the evaluation and opined that (1) psychiatric medications were "clinically indicated" because they constituted a "first-line treatment" of delusional disorder; (2) Goldman didn't meet the "criteria for involuntary treatment under Colorado statutes"; and (3) Goldman's prognosis for restoration to competency was "at least *fair*" with antipsychotic medications and "poor" without any form of treatment "as untreated delusions may persist for many years."

¶ 7 Less than a week later, Goldman moved to dismiss the case under section 16-8.5-116(4), C.R.S. 2022 (repealed 2024),[3] asserting that dismissal was required because he was incompetent to proceed and there was no substantial probability of restoring him

---

[3] Throughout this opinion, we refer to the version of section 16-8.5-116, C.R.S. 2022, that was in effect when the district court dismissed the case. The General Assembly has since amended the relevant provisions twice, ultimately repealing subsection (4). *See* Ch. 423, sec. 3, § 16-8.5-116(10), 2023 Colo. Sess. Laws 2484-85; Ch. 372, sec. 12, § 16-8.5-116(3)-(4), 2024 Colo. Sess. Laws 2515-16.

to competency in the reasonably foreseeable future.  In April 2023, the district court granted Goldman's motion to dismiss after a hearing.  It determined that Dr. Ferguson and Dr. Brar opined that Goldman could be restored to competency only if he were to adhere to a psychotropic medication regimen.  And because Goldman, among other things, wasn't (1) prescribed such treatment; (2) ordered by the court to take psychotropic medications; or (3) inclined to medicate voluntarily, the court reasoned that there was no substantial probability that he would be restored to competency in the reasonably foreseeable future.

¶ 8     In accordance with section 16-8.5-116(10), the district court stayed its order of dismissal for twenty-one days to allow the prosecution to take "any of the steps authorized by that subsection" and "assess their legal options for requesting that [Goldman] be involuntarily medicated."  However, after denying the prosecution's motion for reconsideration, the court dismissed the case against Goldman.

## II.     Analysis

¶ 9     On appeal, the People contend that the district court erred by dismissing its case on the grounds that there was no substantial

probability of restoring Goldman to competency because all evidence in the record suggested that, with the use of appropriate medications, Goldman could be restored to competency in the reasonably foreseeable future. We agree and, therefore, reverse.

## A. Standard of Review

¶ 10 When, as here, a district court dismisses a charge based on its application of the controlling legal standard to undisputed facts, our review is de novo.[4] *See People v. Curren*, 2014 COA 59M, ¶¶ 13-14 (reviewing de novo a district court's application of the speedy trial statute to undisputed facts); *People v. Yakas*, 2019 COA 117, ¶ 15 (noting that this principle applies to a court's ruling on a motion to dismiss asserting a violation of the Uniform Mandatory Disposition of Detainers Act). Likewise, we review de novo questions of statutory interpretation. *People v. Alaniz*, 2016 COA 101, ¶ 22.

---

[4] The parties dispute whether de novo or clear error review applies to the court's finding that there is a substantial probability that a particular defendant's competency will be restored in the reasonably foreseeable future. However, we need not definitively resolve this dispute because the court's finding here would fail under either standard.

## B. Applicable Law

¶ 11    The right to due process under the United States and Colorado Constitutions prevents the trial of an incompetent defendant. *See Cooper v. Oklahoma*, 517 U.S. 348, 354 (1996); *People v. Zapotocky*, 869 P.2d 1234, 1237 (Colo. 1994). In Colorado, that right is further protected by statute. *See* § 16-8.5-101 to -124, C.R.S. 2024.

¶ 12    Under the statute, a defendant is incompetent to proceed if, "as a result of a mental disability or developmental disability," he lacks "sufficient present ability to consult with [his] lawyer with a reasonable degree of rational understanding in order to assist in the defense," or he "does not have a rational and factual understanding of the criminal proceedings." § 16-8.5-101(12). Thus, to be competent to stand trial, a defendant must have "*both* a factual understanding and cognitive ability *and* perceptions and understandings that are rational and grounded in reality." *People v. Mondragon*, 217 P.3d 936, 941 (Colo. App. 2009).

¶ 13    Either defense counsel or the prosecution may file a motion to determine competency when they have reason to believe that the defendant is incompetent to proceed. § 16-8.5-102(2)(b), C.R.S. 2022. If a district court makes a preliminary finding of

7

incompetency over a party's objection, or it determines that it lacks sufficient information to make such a finding, then the court must order "that the defendant be evaluated for competency by the [D]epartment and that the [D]epartment prepare a court-ordered report." § 16-8.5-103(2), C.R.S. 2024.

¶ 14 After the court receives this report, it must enter a final determination regarding the defendant's competency to proceed. § 16-8.5-103(5). And if, as here, the defendant is incompetent and on bond, and there is a substantial probability that services will restore competency, then the court must order "that restoration to competency take place on an outpatient basis, unless the [D]epartment recommends inpatient restoration services." § 16-8.5-111(2)(b)(I), C.R.S. 2022 (version effective until May 16, 2023).

¶ 15 Within ninety-one days after this order, the court must again review the case to determine, among other things, whether there is a substantial probability that the defendant will be restored to competency in the reasonably foreseeable future. § 16-8.5-116(2)(a). The court must review the case every ninety-one

days thereafter until four reviews have been conducted.
§ 16-8.5-116(3).

¶ 16     After the fourth review, the court must continue to review the defendant's case every ninety-one days until the defendant is restored to competency or it determines that there is no substantial probability that the defendant will be restored to competency in the reasonably foreseeable future. § 16-8.5-116(4). In the latter event, "the court shall dismiss the case subject to the provisions of subsection (10) of this section." *Id.* In turn, subsection (10) provides that prior to dismissing a case under subsection (4), a district court must identify whether an incompetent defendant "meets the requirements for certification pursuant to article 65 of title 27, or for the provision of services pursuant to article 10.5 of title 27, or whether the defendant will agree to a voluntary commitment." § 16-8.5-116(10). If the defendant meets the requirements for certification or provision of services and is not amenable to a voluntary commitment, then the court may stay the dismissal for twenty-one days to allow the prosecution to pursue certification proceedings or the provision of necessary services. *Id.*

## C. The District Court Erred by Dismissing the Case Under Section 16-8.5-116(4)

¶ 17    The People contend that the district erred when it concluded that there was no substantial probability that Goldman would be restored to competency in the reasonably foreseeable future because "all evidence and evaluations indicate[d] that [he could] be restored to competency with necessary medications." Goldman responds that this argument misconstrues the governing test because the proper inquiry was whether it was *likely* that he would "actually be restored to competency in the reasonably foreseeable future," not whether his restoration was possible in theory. Goldman argues that the court correctly concluded that there was no substantial probability that he would be restored to competency in the reasonably foreseeable future after finding, among other things, that (1) his prognosis for restoration was poor without psychotropic medications; and (2) his condition was unlikely to change given that he wasn't even prescribed medications, much

less taking them under a court order or voluntarily.[5] We agree with the People.

¶ 18 The record shows that Goldman underwent eight psychological competency evaluations with Dr. Ferguson and one psychiatric and medication evaluation with Dr. Brar. All nine reports concluded that, while Goldman was incompetent to stand trial at the time the reports were completed, his competency could be restored in the reasonably foreseeable future with adherence to appropriate medications. Dr. Ferguson opined that psychotropic medications were recommended because there was at least a "fair" chance that Goldman would regain his competency with the use of those medications. She noted that it was "unlikely that [Goldman's] mental health symptoms [would] remit spontaneously without the use of psychotropic medications." Dr. Ferguson concluded that

---

[5] We note that Goldman's answer brief addresses issues the People didn't raise in their opening brief. Specifically, Goldman argues that the district court properly dismissed the case because the People failed to (1) appeal the court's ruling declining to include adherence to psychotropic medications as a condition of his bond; and (2) pursue, let alone establish the requirements for, involuntary treatment with medication. In the reply brief, the People clarify that these are not issues on appeal. We thus need not address them. *See People v. Zweygardt*, 2012 COA 119, ¶ 47 (not addressing an issue the appellant didn't present for appellate review).

there was a substantial probability that Goldman "[would] be restored to competency within the reasonably foreseeable future" and "[would] be restored to competency and [would] likely remain competent with the use of medications."

¶ 19    Dr. Brar's opinion was no different. Dr. Brar stated that antipsychotic medications were "clinically indicated" because they constituted a "first-line treatment" for delusional disorder. She opined that, with antipsychotic medications, Goldman's clinical prognosis "should be at least *fair*." However, "[w]ithout *any* form of treatment," Dr. Brar opined, "his prognosis [was] *poor* as untreated delusions may persist for many years." Under these circumstances, Dr. Brar concluded that if Goldman "were to engage in treatment with antipsychotic medications, he [could] indeed be restored in the foreseeable future."

¶ 20    True, both doctors noted that there were challenges to treating Goldman with psychiatric medications. Dr. Brar pointed out that Goldman had told her that he was disinterested in taking the medications. Similarly, Dr. Ferguson noted that Goldman had a "limited insight into his psychiatric disorder and it [was] unclear if he [would] be willing to take medications in the future." Moreover,

12

Dr. Ferguson reported that "while some symptoms of psychosis tend to respond well to psychotropic medications, Mr. Goldman displayed delusional beliefs, which may be somewhat resistant to psychotropic medications."  But Dr. Brar noted that "[s]tudies have indicated that delusions may at least partially respond to antipsychotics."

¶ 21    Regardless, Dr. Ferguson and Dr. Brar unequivocally concluded that Goldman could be restored to competency in the reasonably foreseeable future if he were to take antipsychotic medications.  Thus, while both doctors acknowledged that such a treatment wasn't certain to render Goldman competent to proceed, the likelihood of Goldman's restoration to competency with the use of medications was more than just a "theoretical possibility." Despite this, the district court concluded that there was no substantial probability that Goldman would be restored to competency in the reasonably foreseeable future.

¶ 22    In reaching this conclusion, the court considered Dr. Ferguson's and Dr. Brar's opinions and determined that "without psychotropic medication[s], there was not a substantial probability that [Goldman would] be restored to competency in the foreseeable

future." And because Goldman wasn't, among other things, prescribed such medications, inclined to take them voluntarily, or ordered by the court to medicate, the court concluded that he was necessarily unlikely to be restored to competency in the reasonably foreseeable future. We think the court erroneously dismissed this case under section 16-8.5-116(4) for three reasons.

¶ 23     First, the court relied almost exclusively on the fact that Goldman wasn't voluntarily medicating and was disinclined to take medications in the future to conclude that he was unlikely to be restored to competency. Put differently, the court dismissed Goldman's felony charge because it found that he wasn't willing or able[6] to address his mental health conditions with the treatments that the two doctors had recommended. This approach left Goldman's condition untreated, which contradicts the statute's objective of improving the health of defendants. *See* Ch. 389, sec. 1(2), 2008 Colo. Sess. Laws 1837.

---

[6] As the reports indicated, individuals with Goldman's condition frequently have poor insight into their condition, making their voluntary use of medication challenging.

¶ 24    More significantly, however, in reaching this conclusion the court disregarded the fact that Goldman didn't ever definitely *confirm* whether he would or wouldn't medicate. To be sure, he had told Dr. Brar that he was disinterested in taking psychotropic medications. Likewise, Dr. Ferguson reported that it was unclear whether Goldman would be willing to medicate considering that he had limited insight into his psychiatric disorder. And at the hearing, the district court noted that "he does not voluntarily consent to taking psychiatric medication." But in response to the court's observation, Goldman's counsel clarified that Goldman hadn't said that he would "never take[] medications" and that he was only "waiting to see what the result of the motion to dismiss" would be before taking a position on that issue. The court didn't follow up on these statements or ask Goldman to confirm his position before ruling on his motion to dismiss the case. Instead, the court granted Goldman's motion primarily because he wasn't voluntarily medicating at the time of the hearing, even though he hadn't unequivocally said that he wouldn't take the recommended medications in the future.

¶ 25　Second, while the court found that there was no court order requiring Goldman to medicate, the parties and the court were unclear about whether psychotropic medications were a condition of Goldman's bond.  The prosecution argued that medication treatment was a condition of Goldman's bond, which would have allowed the prosecution to seek revocation of his bond; a return to custody; and, potentially, an order for involuntary medication if he refused to take the medications that would likely help restore him to competency.  In support of this argument, the prosecution directed the court to the language in its November 2022 order that said, "It is the Court's intention that [Goldman's] cooperation with any psychotropic medications that are recommended by the [psychiatric and medication] evaluation shall become a condition of bond."  The court observed that the order was "poorly worded":

> [The November 2022 order] did not impose a bond condition that required Mr. Goldman to respond to a hypothetical future medication recommendation by affirmatively seeking out a prescribing psychiatrist, obtaining a prescription, and then taking any medications that individual might hypothetically prescribe.  At most, the [November 2022 order] stated an intention to enter future orders upon receipt of the [psychiatric and medication evaluation report]. . . .  [T]he Court has not entered any

16

> order requiring Mr. Goldman to take
> psychiatric medications as a condition of bond.

We note that despite these statements, the status of the orders remains unclear. The plain language of the court's November 2022 order said that Goldman's compliance with the medication treatment recommended under the psychiatric and medication evaluation constituted a condition of his bond.[7]

¶ 26    Third, while Goldman hadn't been prescribed medications at the time of dismissal, such treatment wasn't only "hypothetical." The record shows that the prosecution had made some progress on the medication front. Specifically, in the November 2022 order, the district court appointed Goldman a liaison to assist "with the determination of an appropriate prescribing physician for any medications or treatment recommended" under the psychiatric and medication evaluation. But only days after Dr. Brar completed that evaluation — recommending a specific medication treatment the liaison could assist with obtaining a prescription for — Goldman

---

[7] Regardless of the clarity of the record, there have been extensive changes to the governing statutes, and this issue may not arise in the same manner on remand. We therefore express no opinion on how the district court should ultimately resolve this issue.

filed his motion to dismiss. The court then dismissed the prosecution's case in part because Goldman didn't have a prescription for psychiatric medications.

¶ 27 True, at the time Goldman moved to dismiss the case, he had been facing charges for two years and had been participating in outpatient restoration therapy at some level for about eighteen months. But the record shows that, during that time, Goldman had engaged only in education and psychotherapy but not the medication that both doctors indicated would likely help restore him to competency.[8] The district court noted the challenges associated with restoring Goldman to competency given that there was no court order requiring him to take medications, he wasn't prescribed medications, and he wasn't voluntarily medicating. The court observed that these circumstances were causing a logjam, where both parties were waiting for something to happen. While we agree the court could appropriately manage the case by prodding the parties to action, we don't agree that it was the right junction to

---

[8] In her report, Dr. Brar stated that while it was unclear whether Goldman had reached the maximum benefit from education and psychotherapy, her "clinical suspicion" was that he was "unlikely to progress much further without the assistance of antipsychotics."

simply dismiss the prosecution's charge. Given the circumstances of this case, we think that ruling was premature.

¶ 28     In sum, the district court erred when it dismissed the stalking charge against Goldman after concluding that there was no substantial probability that he would be restored to competency in the reasonably foreseeable future on these facts. On remand, the court should reinstate that charge and address anew the issue of Goldman's competency to proceed.

## III.   Disposition

¶ 29     The order of dismissal is reversed, and the case is remanded to the district court to reinstate Goldman's stalking charge and conduct further proceedings consistent with this opinion.

JUDGE HARRIS and JUDGE YUN concur.